**Austin REED, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A02–9103–CR–99.[1]

Court of Appeals of Indiana,
First District.

Dec. 10, 1991.

Rehearing Denied Jan. 23, 1992.

Transfer Denied March 11, 1992.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

STATEMENT OF THE CASE

RATLIFF, Chief Judge.

Austin Reed appeals his conviction for Dealing in Cocaine,[2] a Class A felony, and Maintaining a Common Nuisance,[3] a Class D felony. We affirm.

1. This case was transferred to this office by order of the Chief Judge on November 18, 1991.

2. IND.CODE § 35–48–4–1.

3. IND.CODE § 35–48–4–13.

## ISSUE

We rephrase the issue on appeal as whether the initial search of the residence when Reed was arrested constituted a valid "protective sweep"?

## FACTS

Pursuant to an anonymous tip, Reed became the subject of an undercover drug investigation in March 1989. Reed was under surveillance by Indiana State Trooper Strange for several months. On August 16, 1989, Trooper Strange engaged in an undercover drug deal with Reed at the O.K. Corral Bar during which he purchased a half gram of cocaine for $50. He obtained an arrest warrant for Reed based on this transaction.

On October 19, 1989, several police agencies acting together attempted to serve several arrest warrants. The attempt to serve Reed at the O.K. Corral bar was unsuccessful. Detectives Frantz and Davis went to the house of Rebecca Hill, Reed's girlfriend to find Reed at approximately 2 a.m. They observed a light go on and off inside the house. They also noticed a rental car parked outside in which Reed had been seen earlier. After other officers arrived and surrounded the house, Detectives Frantz and Davis knocked on the front door and announced themselves. Det. Conn, who had been at the side of the house, yelled "they're flushing it" when he heard the toilet flush. The detectives broke the front door open. They grabbed Reed who was standing inside the front door and pulled him outside.

As Reed was being restrained, Det. Frantz began to enter the dark house while yelling and asking if anyone else was inside. A woman answered, but did not come out. Dets. Frantz and Davis began a protective sweep of the house, turning on lights as they proceeded. As Det. Frantz entered the bathroom, he saw a bag of cocaine floating in the toilet. He continued down the hallway and ordered Reed's girlfriend to come out of the bedroom, which she did. When no one else was found inside the house, the police asked Reed to consent to a search, but he refused. The police obtained a search warrant based upon the cocaine seen in plain view in the toilet. Several other items of contraband were recovered during the search made pursuant to the search warrant.

Prior to trial, Reed objected to all of the evidence obtained during the protective sweep and subsequent search. The motion was denied and the evidence was admitted during trial despite objections. Reed was convicted of dealing in cocaine and maintaining a common nuisance.

## DISCUSSION AND DECISION

█  Reed asserts that the initial search of the residence was not a protective sweep; and, therefore, any evidence obtained was inadmissible at trial. He argues that evidence recovered once the search warrant was issued was also inadmissible because the initial view of the cocaine which supported the warrant was invalid. Generally, a search warrant is necessary for a search and seizure to be valid. *Smith v. State* (1991), Ind., 565 N.E.2d 1059, 1060. A warrantless search is presumed unreasonable, and the State bears the burden of showing an exception to the warrant requirement. *Id.*

█  The United States Supreme Court has held that incident to an arrest, the police can, as a precautionary measure and without probable cause or reasonable suspicion, look in other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. *Maryland v. Buie* (1990), 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276, 286–87. However, beyond the immediate area, officers need articulable facts which would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. *Id.* Indiana followed *Buie* in *Smith*, 565 N.E.2d at 1061–62. In *Smith*, our Supreme Court noted that *Buie* has two alternatives: that the area searched was "immediately adjoining the place of arrest," or that there existed articulable facts warranting a reasonable belief that "the area to be swept harbors an individual posing a danger to those on the

arrest scene." *Smith,* at 1062. Reed was apprehended in the doorway of Hill's residence after the police broke down the door. Attempting to arrest Reed, the police pulled him outside the door, and the officers and Reed fell into the bushes. The State concedes that we are concerned with the latter alternative in *Buie* in determining whether the protective sweep was justified.

Reed correctly observes that in *Buie* and *Smith,* the arrests occurred inside the buildings, unlike his arrest. Even so, an earlier Indiana case did concern an arrest occurring at the doorway of the residence and the subsequent search. In *Williams v. State* (1979), Ind.App., 397 N.E.2d 1088, police served an arrest warrant on Smith at Williams's home. *Id.* Smith answered the door and was immediately arrested. She informed the police that another person was in the house. The police initiated a protective sweep to check for other persons who might have weapons which might endanger their safety. *Id.* The court found the protective sweep reasonable. *Id.* at 1089. Although *Williams* was decided prior to *Buie,* we find it consistent with *Buie*'s holding.

▮ Although the United States Supreme Court has not ruled on whether *Buie* should be extended to protective sweeps following an arrest occurring outside of the building, other federal courts have upheld the protective sweep although the suspect was arrested outside of the premises. *See United States v. Oguns* (2d.Cir.1990), 921 F.2d 442 (protective sweep incident to an arrest outside the home is permissible if reasonable belief exists that another person is inside and aware of arrest since that person may jeopardize the officer's safety); *United States v. Merritt* (5th.Cir.1989), 882 F.2d 916 (although defendant stepped outside of motel room when surrendering to arrest warrant, officers were justified in making protective sweep because they were aware room was registered to another person which supported a reasonable belief that a search was necessary for their safety); *see also United States v. Akrawi* (6th Cir.1990), 920

F.2d 418 (protective sweep of second floor of home was improper where no specific or articulable facts for officers to believe anyone else was inside posing a safety threat). We adopt the reasoning of the Ninth Circuit expressed in *United States v. Hoyos* (9th Cir.1989), 892 F.2d 1387, 1397:

"Hoyos's contention that the protective sweep exception to the requirement of a search warrant to enter a residence does not apply if the arrest occurs *outside* is not supported by any authority. This is not surprising because the distinction is logically unsound. If the exigencies to support a protective sweep exist, whether the arrest occurred inside or outside the residence does not affect the reasonableness of the officer's conduct. A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another." (emphasis in original)

We hold that a protective sweep incident to an arrest occurring outside the residence may be valid if the police have articulable facts which support a reasonable belief that other persons may be inside the residence which may pose safety threats. Applying this standard to the present case, we find the detectives did show articulable facts to justify the protective sweep.

The detectives were aware that the house they surrounded belonged to Reed's girlfriend. After the detectives knocked on the door and announced themselves, one officer heard the toilet flush, and several officers heard some running or scuffling sounds. As the officers were restraining Reed, Det. Frantz yelled into the house asking if anyone else was inside. A woman's voice answered from the back of the dark residence, but the woman did not exit the house. The officers were justified in entering the house to locate the woman and anyone else inside to protect themselves. The officers did not have to remain outside and hope that the woman or any other person possibly inside was not dangerous. *See Hoyos,* 892 F.2d at 1397. Accordingly, we find the protective sweep was valid. The court properly admitted the evidence discovered during the protective sweep and the evidence confiscated pursuant to the

search warrant which was thereby obtained.

Affirmed.

BUCHANAN and MILLER, JJ., concur.

J.E., Appellant–Defendant,